Issue. Please call the next case. 2-4-C, 11-53, Barbara Anderson v. Community Unit, School District, 200. Good morning. May it please the Court, Mr. Conley, my name is Stephen Smalling. I represent Barbara Anderson and we are here on my appeal from the Circuit Court's order overturning the Workers' Compensation Commission's decision finding in her favor that she was entitled to benefits. The arbitrator found in favor of the claimant, the Commission also affirmed, and the argument is going to be that the Circuit Court said that she was outside the scope of her duties. Yes. So tell us why that is. I mean, we're reviewing the Commission's decision, if you know. Yes. But where did the Circuit Court err in its analysis? First of all, I believe it used an incorrect standard of review in saying it's de novo because the facts are undisputed. We all agree what happened. However, where the facts are undisputed and there's more than one inference that can be drawn, the manifest way standard applies. There's a real central dispute here, and to me this is critical too, whether or not the teacher who is demonstrating this movement on the balance beam had the authority and the permission to do that vis-a-vis the teacher in charge of the class, right? I agree, Your Honor. Absolutely. And that's what I find somewhat hard to reconcile with the respondent's arguments, that on the one hand, Mrs. Anderson, the third grade teacher, is unqualified to be in that PE class, is not certified, has not been told by the administration, oh, you can conduct that class, you can determine what the appropriate curriculum is, nor are you certified to determine how to conduct that curriculum in the safest manner. Yet conversely, they argue, oh, our PE teacher, Mrs. Williams, is certified. Ms. Thornburg, the principal, deferred to her on how Ms. Williams was to conduct that class. She deferred to Ms. Williams on determining how to proceed with the curriculum and how to do it in the safest manner. They put Ms. Williams in charge of this class. Ms. Williams' job was to figure out how to conduct the curriculum, teach these students how to do it in the safest manner. And Anderson didn't just wind her into that classroom on her own as a frolic. It was part of her to pick up the students and be in that class. But one thing that's undisputed, and I'm sure counsel can weigh in on this, is that this demonstration was done not only with the consent of Mrs. Williams, but it was done with her assistance, correct? Yes. Let's not lose sight of what the facts are. This isn't some Olympic balance beam with all the corbet and nauticum and each type of routine being done to start the landing. This thing is four inches wide. I've got a piece of cardboard here that's four inches long. It's approximately this high. Counsel, does it make any difference? I think it does. It makes a damn bit of difference. Okay. The question is, is she so far out of the scope of her employment that it didn't arise out of? Now, what was she doing? She was assisting in a PE class. Is that right? Yes, sir. Is that part of the duties of the school district? Absolutely. Okay. So even if she was violating orders, doing what she wasn't supposed to be doing, even if she'd been told not to do it, as long as she is still engaged in furthering the employer's business, she's covered. Isn't that true? Yes, sir. So what difference does it make how wide the balance beam is? Well, Todd, they, according to... Well, I know what you're going to say. It's ultra-hazardous. And you're probably thinking, as I was, well, why are the kids doing this if this is so ultra-hazardous and dangerous? That's the other point. I mean, nobody's going to buy the ultra-hazardous argument, so... But they're saying that this was the most unreasonable exercise of any purported duty a teacher could accomplish within a school facility. And I just want to point out, it wasn't unreasonable. Now, if Ms. Anderson would have went down to that gym when no class is being conducted... After hours to do a show off with the students. Right. Relive the glory days and start doing these routines, maybe that argument would fly under this circumstance when they put Ms. Williams in charge, the certified PE teacher in charge... She decides how the class is conducted. She goes, yeah, let's do this. Exactly. And we've got the beam, we've got the mats. She helps her up. She spots her. I just think it carries it too far, especially if you, as the arbitrator pointed out, the Segler case where this guy's cooking a pot pie in an industrial oven and used a plastic manufacturing process. Maybe an employer wouldn't anticipate that. In this case, Ms. Anderson also goes out at recess, plays duck, duck, goose, where you tap the kids on the head, duck, duck, say goose, and then they chase you around. She did that. Is she supposed to go to the principal and say, I'm going to do duck, duck, goose today? She also testified that during the gym class they did a mile run with the students. She would do that also in order to encourage them. There was a bowling unit in the PE class. The administration authorizes other activities, right? Yeah. She was there. There seems to be an argument surrounding Thornburg's testimony. Thornburg testified that Williams had the authority in her class to deny somebody the opportunity to do the beam. That was Thornburg's testimony. Does it really follow logically that if I have the authority to deny somebody something, then I also have the authority to grant it? Yes. That follows logically? I think so. If no one is supposed to be in this room and I have the power to tell you to get out, do I have the power to let you come in here against the rules? Yes. Why? Why would I have the power to grant you something that is totally against the rules? Well, in this particular context? No, I'm asking a hypothetical question. I know what happened here. I just don't see that it follows logically that because I can tell you not to do something, I also have the power to tell you you can do it. That doesn't follow as far as I'm concerned. A policeman, I mean, a person can tell somebody, don't go through a red light. I have the power to tell you. I certainly don't have the power to grant you the right to do it. Correct. So, I mean, it just doesn't seem to follow. One follows the other. But in this particular case, Williams, it appears, let her do it. I'm sorry? Williams let her do it. Okay. A sister. She helps you. She's a sister. Absolutely. Anybody else? I don't have much else to offer. I think that it was foreseeable. I don't think it was unreasonable. And I believe, as this honorable court pointed out in its Bolingbrook police decision issued on Monday, that generally it's a question of fact for the commission. The commission weighed all the facts, assessed the credibility of the witnesses, made the finding. And I just don't believe the circuit judge was appropriate in substituting his opinion for that of the commission because obviously he disagreed with it. And I think implicitly in the circuit court's analysis and the dissenting commissioner, they were attempting to interject contributory negligence into this type of analysis where it doesn't belong. Thank you. Thank you, counsel. Counsel, you may respond. Good morning, justices. May it please the court, counsel. My name is John Conley, and I represent the district, the 200 school district in this particular case. I listened to your honor's questions and the comments of counsel, and I would suggest to you that the circuit court judge in this case, and we're not reviewing that, but it was brought up, had a different opinion than the Workers' Compensation Commission, which is more consistent with our interpretation and application of the facts. Do we really care what the circuit judge did? I know. We don't care. I understand. We're reviewing the commission decision. Was it or wasn't it against the manifest way of the evidence? Well, I think there should be a de novo review in this situation. Why? Because the facts are undisputed in this case relative to what this woman's job was. And I would like to focus this morning on what her job duties were. There are some different inferences that could be drawn from this. Well, I believe that there's, there may be, your honor. In that case, you just lost on de novo. Well, I won't reference. There are different inferences it has to be manifest way. Judge, I think in this case that I would argue that there are no different inferences that can be drawn in this case because of what her responsibilities were. And I suggest that you don't want to spend all your time, and we understand de novo, you know, let's assume you're going to end up on a manifest way. I'm not conceding that, your honors. But in argument of that, I would suggest that focus on what this woman's job was on a day-to-day basis. She had been with this district for a number of years. Was there anything different? For 18 years. But the question is, was she doing something that was so outrageous and in violation of rules and order to take her out of the sphere of her employment? Right. What's the business of the school district? To provide education to the students. Part of which is P.E., is it not? Correct, your honor. And what was she doing? She does not teach P.E. No, no, no. That's not the question I asked you. What was she doing? At that particular time. She was assisting in a P.E. class. That she unilaterally decided that she should do. And I would just suggest to the court that this was 100% voluntary on her part. Her charge is, and we talked about this and the record is clear, her charge every day is to teach in the classroom. She spends 95% of the time in the classroom. She's charged with transferring the students from her classroom. I understand that. Let me give you this example that comes to mind. She's not in there to demonstrate physical education moves on a daily basis. We understand that. But as the commission said, she was in there within the reason. She had a reason to be there because it was part of her daily duties. Yes, to go into the gymnasium and pick up the children. To transfer them back to her classroom. She had every right to be in there when she was in there, correct? Correct, your honor. All right. She's in there and she does this move with the assistance, not only the assistance and the consent, but the help of the teacher in charge of the classroom. Is that correct? That is, your honor. So you're a teacher and your job is to pick up the students from wherever in the school. And while you're in there, the teacher in charge of the classroom says, Hey, can you help me move this desk across the room? And she does it. And she gets injured. Your position is there's no coverage there because it is not her job to move a desk, correct? I would not agree with that, your honor. I would say that in that situation, in her classroom, because it's connected to something that's going on in her classroom, I would agree that she could help in that situation. Because it's a balance beam thing. Because the balance beam is in there and the students are doing it. Your honor, if I may, relative to that particular balance beam, she is not part of demonstrating what's going on in that particular piece of apparatus. She's not part of moving furniture in the classroom. Somebody else's classroom, is she? No, but that is where she does 95% of her work. She is charged with bringing the students, her job, and I would like to focus on what her job is on a day-to-day basis, to bring them from point A to point B back to the classroom safely. On this particular day, she thought it important that she insinuate herself into that situation. The gym teacher did not ask her. And again, these are colleagues that have been working together for a long time. One is not a supervisor over another. They're both teachers at the school. The supervisor in this situation is the principal, is the district, is the state that requires someone to be certified in order to show and demonstrate to students how they're going to partake in certain things. And particularly in this case, how to act around a balance beam. So according to you, the fact that the teacher admittedly in charge of the classroom, who was instructing students on a balance beam, can't use the assistance of someone else in that classroom, according to you, as a matter of law? Judge, correct. It is beyond the scope of her employment responsibilities. And two wrongs do not make a right in this situation. Those teachers made a decision that was not for the betterment and the advancement of the respondent in this particular case. She never responded to my example. Teacher goes into a class to pick up students. That's her only responsibility, to be in classroom A. Correct. While in classroom A, the teacher says, hey, can you help me move the desk? Same thing. It's not her responsibility to do anything in that classroom at all. I understand, Your Honor. And she gets hurt moving the desk. And your answer is, it's not part of her responsibilities to move anything in that classroom, right? Correct. Is it reasonably foreseeable that desks may have to be moved at some point, Your Honor? Yes. By who? By the administration, because there's that. Is it reasonably foreseeable that this woman, who has no background in gymnastics, according to the principal, and they never knew that she ever did any gymnastics, is it reasonably foreseeable that we're going to see her go into that gym and proceed to go and help the gym teacher? It's reasonably foreseeable that any teacher might assist in any physical education classroom. That's not beyond belief, is it? Correct. And I believe that at some point she has assisted. If someone's in the washroom and they need to make a telephone call, she said she would monitor or manage the children until the instructor came back. But in this particular case, she proceeded to say, okay, I'm going to show. And again, you say the judge was asking if that's considered dangerous or not. Is that you let third graders on it? Well, third graders are much more agile than a 55-year-old. You're not going to contend if it's not dangerous for a third grader, it's dangerous for her? Correct, Your Honor. Why? What's wrong with her? Well, here, if you've got nine-year-olds that can jump on it, they'll launch themselves on it something four feet high. When you talk about a 55-year-old woman who is strange. Be careful with these 55-year-olds. They may get highly insulted, if you realize. Most of us in the washroom are 55. Are you saying that any of us can't get on a balance beam right now? What she was trying to do as well is show a dip step, right? So the dip step requires her to take one foot off the balance beam and lower herself down below the balance beam to show that at 55 years of age, with dress clothes on and street shoes on, that seems to be extreme and hazardous. So it's unexpected. It's nothing that she had authority to undertake. It's completely unexplained. And how does it benefit the children? No one benefited from this. She unilaterally decided that she wanted to make this demonstration. Okay? And because the gym teacher went along with it, it's okay. It's not. It has nothing to do with what her job is. From time to time, will she have to assist? Yes. Could she lend a hand if the teacher's out? Yes. But to go and physically jump on this four foot high, four inch wide. And again, counsel showed you how wide it was. And I don't know, too. I think it's for a 55-year-old woman who is not prepared to do this. There's no testimony that she teaches gymnastics on a regular basis. And it's been on since she was 20. So, counsel, was it appropriate for the, should it be the commission's determination as to whether or not this individual claimant should have been up on that balance beam? Putting aside what William's authorization was and so forth, should we examine the individual characteristics of the claimant? In this case, a 55-year-old woman, do we know anything about, you know, was she morbidly obese? Was she very athletic? What she was wearing? You know, was she wearing high-heeled shoes? So forth. All of those things. Are the individual characteristics of the claimant relevant to this determination by the commission? Yes, Your Honor. And did they take those characteristics into their analysis? But are you saying they are, Your Honor? Are you saying they are relevant? Relative to what she's wearing at that particular time and whether she in any way prepared for this? This is completely, there's nothing foreseeable about this. So, yes, I think it's hugely important that she would go in there spontaneously. How is the respondent supposed to, why is the respondent responsible for someone who goes so far beyond what's, number one, her job description, number two, in her classroom, number three, yes, ducked up goose, that's authorized. Jump rope or a heart-healthy day from time to time, that's authorized. It's something the school has to do. But you're ignoring the fact in your argument that the teacher, Williams, was in control of the classroom and not only authorized it, she assisted in this activity. Again, Your Honor, I would suggest that two wrongs do not make a right in that situation. The fact that the colleagues or teachers on the same level, and one said they could, sure, come and help me or if you want to do this, it is also in the record that this was initiated by Ms. Anderson, not by the gym teacher. And the gym teacher just said, okay. I don't know that it turns on that. Let me read this paragraph. The commission found the claimant was a teacher engaged in the task of educating, assisting students on a subject that they were, in fact, receiving instruction at that time for a class that was part of the curriculum involving demonstrations on the balance beam. Isn't all of that true? Yes, Your Honor. And you're saying it turns out she had no business ever getting on the balance beam. Judge, this was the end of class. She's supposed to come and pick them up. The class has already concluded. They're done with their class for the day. They were lining up to leave. And she said, oh, maybe I'll get involved in this. I will demonstrate to you. Does anyone know a dip step is what my understanding and what the record shows. The class is already over. She did not participate in class. She dropped the children off, as she did, for the eight years prior to their gym class, which they have five days a week, and she drops other people off. She doesn't go in and teach the art class or the music class, and the gym teacher doesn't come into her class. Now, what your example is from time to time, is there a minor assist that could go on? Sure. But something this significant, this much of a departure from what she's supposed to do, from what we reasonably expect she would be doing, takes her outside the course of her employment. I would have had no problem with the argument if she got several students together after school that ended after everybody left in the school playground and did a demonstration. But that's not what happened. Well, in the course of she meets, but arising out of some risk connected to her employment, she's a classroom teacher, a third grade classroom teacher, Your Honor. That's what she does. Ninety-five percent of what she does is in the classroom. Well, perhaps we should announce a rule that says that, you know, teachers beware. If you assist anybody in any other class, you're not going to be compensated if you have an injury. And Judge, the district can't have some exhaustive rule of all the things they can't do. I think that Justice Hoffman was making a point. If you listen, it's too exhaustive. We would never think. We had no knowledge. The principal had no knowledge that she had this background of gymnastics. Wait a minute. Hold on a second. The arbitrator made a finding that she had been allowed to participate in other activities, like bowling. Is that true? Well, the activities were the children's bowling, Your Honor, that they do out in the schoolyard. So it's not bowling. And she participated in that, didn't she? That was an activity that was authorized by the principal and the district, Your Honor. Balance beam was authorized. Balance beam was authorized for the gym class to be taught, not for the other teachers to participate, Your Honor. And I think that this is so far beyond anything that's reasonably conceivable. How would the respondent ever be able to prepare for this or think that this was going to go on? And again, this is a classroom setting. This is where the safety of the students is paramount. And the protocols and procedures that are in place are followed each and every day. And there's a certain routine that goes on here. There's a drop-off. There's a pick-up. That's the art class, the music class, to lunch and to gym. And in this particular case, the pick-up is to be at the door. She saw the balance beam. She thought it would be interesting to go in there and do it. She insinuated herself into that situation.  There was no benefit to the respondent in this case. Does the school district have a policy that says when you're running a PE class, you should not allow any assistance from any other teacher? Not to my knowledge, Your Honor. Did they put that notice out somewhere? Not to my knowledge, Your Honor. Would it even make a difference if they did? Assuming it would even make a difference. You're saying they can't control this? They can't. Your Honor, in that situation, you have two teachers that acted in violation to what the school would think was reasonable in that situation. Just because the gym teacher thought it might be a good idea for this woman doesn't mean that it was a good idea or that it's within the scope of her employment responsibilities. Because someone else gives her permission who has no authority to give the permission doesn't mean that it was in the scope of her employment responsibilities. This is a classroom activity that goes on involving this balance beam. You're trying to split hairs here. This isn't something where they brought in some outside equipment to do a demonstration. They're demonstrating, moves on a balance beam, and she comes in and says, I think I'm still a pretty good gymnast. Judge, if she was saying, well, let me help you with this math problem because I know how to figure out differently, this requires physical agility to stand on a four-inch-wide, four-foot-long balance beam. And it's four foot high off the ground. This is something that requires a significant amount from someone who's 55 years old and in dress shoes and in dress clothes and has done nothing to prepare herself for this type of exercise. You're not suggesting she got up on the beam in heels, you said in dress shoes. Is there any evidence? Was she trying to actually, you know, work on the balance beam in heels? Dress shoes is what the testimony is. It's not high heels, but she didn't say it certainly wasn't gym shoes. It certainly wasn't something that suggests that she was in her bare feet. Okay. I think we understand that. Okay. I respectfully suggest that the decision of the circuit court be affirmed and that there's ample evidence to support, that this woman was so far outside the scope of her employment and that what she was doing at the time of the incident was not incidental and did not arise out of some risk connected to her employment. Thank you for your time this morning. Thank you, counsel. Counsel, you may reply. We're going to start talking about age, shoes, clothes, experience, and such. We're getting into factual determinations whether this was so outrageous or not. It brings us into the manifest weight standard. I pointed out. So if she's 80 and she's obese and she's wearing high-heeled shoes and the commission found it to be compensable, that would be against the manifest weight. Do you agree with that? I don't believe so. No? But I'm saying if counsel is going to raise all these issues, it brings it into a manifest weight standard. Well, okay. And I think he spent the majority of his time addressing this from that standpoint. But let's talk about it. And you're talking about it from the manifest weight standpoint. At some point, are you saying that the individual characteristics of the claimant should be examined to determine whether or not this would be a compensable injury? I don't believe so. So the 80-year-old obese woman in high heels would be covered? If she had gone to that class before. If the teacher in charge says, yes, go ahead and do what you're going to do. Go ahead and do a backflip on the balance beam. The individual characteristics of the claimant and the afterthought. It's in furtherance of the carrying out the employer's purpose or advancing its interests. In this particular case, what she was engaged in was an activity that had gone on for numbers of years where they're putting 8- and 9-year-olds up on pain. We're talking about ages, which I think is a delicate subject. Some people could be offended. But following up on Justice Harris's question, which is legitimate, you seem to be overlooking and helping your argument. As I understand it, wasn't it in the record that this 55-year-old woman was a former gymnast? Yes. High school and college experience. So she's got experience in being on a balance beam anyway. So we're going to get into it. She's different than the average 55-year-old he's trying to portray who doesn't know anything about a balance beam. Correct. What difference does it make? I mean, I don't know if it makes a difference. What difference does any of this make? The question is, is she furthering the mission of her employer? I mean, that's what the cases say. It can be dumb. It can be stupid. It can be negligent. It can be against the rules. But if she is still furthering the interest of the employer, she recovers. They all say the same thing. And you're not disputing that proposition, are you? No, well stated, Your Honor. Very good. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue.